# Supreme Court of Texas

No. 20-0393

James Fredrick Miles,

*Petitioner*,

v.

Texas Central Railroad & Infrastructure, Inc. and
Integrated Texas Logistics, Inc.,

*Respondents*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

CHIEF JUSTICE HECHT, joined by Justice Young, concurring.

The Texas Central Entities[1] argue that they are an "interurban electric railway company" with the power of eminent domain under Chapter 131 of the Texas Transportation Code to acquire property for a high-speed railway between Dallas and Houston. The Court agrees and thus does not need to reach the Texas Central Entities' additional argument that they are a "railroad company" with the same power under

---

[1] I adopt the Court's short-form reference for respondents Texas Central Railroad & Infrastructure, Inc. and Integrated Texas Logistics, Inc.

Section 81.002 of the Code.[2] I join the Court's opinion in full but write briefly to explain why I agree with the Texas Central Entities' Section 81.002 argument.

Section 81.002 defines a railroad company to include, in subsection (1), "a railroad incorporated before September 1, 2007," and, in subsection (2), "any other legal entity operating a railroad".[3] Miles argues that "operating a railroad" means running trains on tracks. Consequently, Section 112.053's authorization to a railroad company to "acquire property by condemnation" extends only to entities with trains and tracks.[4] The chicken-and-egg illogic is obvious: an entity cannot obtain a right-of-way on which to run trains on tracks without first running trains on tracks.

The answer, Miles argues, is that an aspiring railroad company can simply partner with an existing railway. In other words, Section 81.002 banned all new railways in Texas incorporated after September 1, 2007. Miles points to nothing in Texas' history of railway regulation suggesting that the Legislature had so draconian an intent in enacting Section 81.002.

But we need not speculate whether that somehow could have been the Legislature's purpose, however unlikely. The illogic of Miles' argument is firmly rebutted by Section 112.053's full text, which states:

> (a) A railroad company may acquire property by condemnation if the company cannot agree with the owner for the purchase of the property and the

---

[2] TEX. TRANSP. CODE § 81.002.

[3] *Id.*

[4] *Id.* § 112.053(a).

2

property is required for any of the following purposes:

(1)   the incorporation of the railroad;

(2)   the transaction of company business;

(3)   depots, station buildings, and machine and repair shops;

(4)   the construction of reservoirs for the water supply;

(5)   the right-of-way, or new or additional right-of-way;

(6)   a change or relocation;

(7)   a roadbed;

(8)   the shortening of a line;

(9)   the reduction of grades;

(10)  the double tracking of the railroad or the construction and operation of tracks; or

(11)  any other purpose connected with or necessary to the building, operating, or running of the railroad.[5]

A railroad company may condemn property for "the right-of-way" and "roadbed"—that is, *before* tracks are laid.[6] It may condemn property before incorporating—that is, before doing any business at all.[7] And it may condemn property for "any other purpose connected with or

---

[5] *Id.*

[6] *Id.* § 112.053(a)(5), (a)(7).

[7] *Id.* § 112.053(a)(1).

necessary to the *building* . . . of the railroad", as well as for operating and running it.[8]

Clearly from these provisions, the meaning of "operating a railroad" cannot be restricted to running trains on tracks. Rather, it must extend to the operation of the railroad business from its inception, including the acquisition of tracks, trains, and other facilities. This is consistent with the statutory extension of the power of eminent domain to common carriers,[9] including one that "owns, operates, or manages a pipeline".[10] By Miles' logic, any would-be pipeline operators could never own, operate, or manage a new pipeline because the pipeline must already be in use to acquire a right-of-way. Miles' argument would not only shut down new railways, but new pipelines as well.

Thus, while I join fully in the Court's opinion that the Texas Central Entities may condemn property for a high-speed railway as an "interurban electric railway company" under Chapter 131, I would also hold that they may do so as a "railroad company" under Section 81.002.

Nathan L. Hecht
Chief Justice

**OPINION FILED:** June 24, 2022

---

[8] *Id.* § 112.053(a)(11) (emphasis added).

[9] TEX. NAT. RES. CODE § 111.019(a) ("Common carriers have the right and power of eminent domain.").

[10] *Id.* § 111.002.

4